**UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF MICHIGAN  
SOUTHERN DIVISION**

CHRISTOPHER HALL,

    Petitioner,

v.

                                                 Case No. 04-73548

                                                 HONORABLE DENISE PAGE HOOD

DOUG VASBINDER, Warden,

    Respondent.

_____/

## MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

This matter is before the Court on Magistrate Judge R. Steven Whalen's Report and Recommendation ("Report") dated August 25, 2007. In his Report, the Magistrate Judge recommends that Petitioner Christopher Hall's Petition for Writ of Habeas Corpus be granted and that a conditional writ of habeas corpus issue. Respondent filed an Objection to the Report on August 3, 2007. Petitioner filed a Response to Respondent's Objection on August 8, 2007.

**II.    FACTS & PROCEDURAL HISTORY**

Following a jury trial, Petitioner was convicted of second-degree criminal sexual conduct, obstruction of justice and conspiracy to obstruct justice. The charges arose out of alleged sexual improprieties involving his daughter, Ashley Owen, who was 12 years old at the time. The events which gave rise to his conviction took place during an August 1998 family camping trip to Kalkaska, Michigan. Present on the camping trip were Ashley, her sister Alex, her step-brother Jordan, her step-sister Jericka, her step-mother Dondrea Hall, her paternal grandfather Arthur Hall, her paternal step-grandmother Janet Hall, her friend Amber, and Petitioner.

Once the alleged sexual improprieties became known to authorities, a Probate Hearing was held because the state Protective Service Agency filed a petition to remove Ashley and her two sisters from Petitioner's home. Present at the probate hearing were Ashley, Dondrea Hall, Marie Iott of the Protective Services Agency, Detective Robert Kellogg of the Charlotte Police Department, Petitioner, and Victoria Easterday, Petitioner's counsel. Petitioner did not testify at the Probate Hearing, which was held on December 18, 1998.

During Petitioner's jury trial, two witnesses, including the prosecutor, made reference to Petitioner's failure to testify at the Probate Hearing. Marie Iott and Detective Kellogg, both present at the Probate Hearing, testified at trial that Petitioner did not testify at the Probate Hearing. The prosecutor made reference to Petitioner's decision not to testify during the cross-examination of Petitioner and during his closing argument.

> On cross-examination, the exchange between Petitioner and the prosecutor went as follows:
>
> Q (by prosecutor): ... Why didn't you testify at ... [the Probate] hearing, Mr. Hall?
>
> A (by Petitioner): It went quick. Everything was just - - there was a room full of attorneys, and a room not much bigger than that...jury box, and we were all crammed in there. And it was just bang, bang, bang. And I asked Vic [attorney Easterday] if I could say anything, and she said, "I'd recommend you didn't say nothing'."
>
> Q: Oh. I see. So, it wasn't that you didn't have a chance. It wasn't that you couldn't talk. It wasn't that all this process went on without any opportunity for you. It's that you didn't and your lawyer told you not to. That's what happened, right?
>
> A: She said, "I suggest you didn't."

(Report, at 10.)

In his closing argument, the prosecutor made the following statements with respect to Petitioner's decision not to testify at the Probate Court Hearing:

> "...[A]nd probably most striking of all was the discovery for all of us that at that process that was portrayed as being so sinister and unfair the Defendant was there with his attorney, *who*

> *sat there silent and made no objection and made no statement and offered no testimony at all, who stood there and what did he do? Hid from the proceedings, he hid from the proceedings, he did not say a word while this was going on. He cowered in fear of discovery for what he had done and what he did that week to try to thwart this investigation. That's what happened that Friday; it was the guilty man in Court being whispered to by his lawyer saying don't get involved in this, they might find something out.*"

(Report, at 10.) In his rebuttal closing argument, the prosecutor stated as follows:

> "I'd ask you this, how long does it take to prepare if all you're gonna do is go in there and tell the truth? How big of a deal is it to go somewhere and answer a few questions if it's the truth? It's not a big deal. What's a big deal is if it's a lie and you've gotta cover all the bases and get to everybody and put something together. That's why the Defendant didn't testify at that hearing that Friday because they hadn't been able to get Victoria [attorney Easterday] up to get the grandparents handled and get all – get everything nailed down yet. He had to stay out of it because everybody didn't have their stories straight. *That was guilt working there and guilty knowledge.* The trust is always the truth, it's the truth the minute you're asked; you don't have to get it straight, it is straight."

(Report, at 11.)

After his conviction, Petitioner filed an appeal to the Michigan Court of Appeals. Petitioner raised six issues on appeal to the Michigan Court of Appeals, five of which were the same issues raised in Petitioner's Writ of Habeas Corpus.[1] The Michigan Court of Appeals affirmed his conviction on April 15, 2003 and denied rehearing on June 1, 2003. The Michigan Supreme Court denied leave to appeal on April 15, 2004.

On September 15, 2004, Petitioner timely filed his Petition for Writ of Habeas Corpus. The Petition raises five issues:

I. The Fifth Amendment privilege against self-incrimination was violated where the prosecutor elicited evidence of Defendant's silence in prior probate court proceedings and then argued to the jury that in probate court, it was "the guilty man being whispered to by his lawyer" who did not testify there. U.S. Const. Amend. V and IV.

---

[1] In his sixth issue on appeal to the Michigan Court of Appeals, Petitioner argued improper venue with respect to the charges of obstruction of justice and conspiracy to obstruct justice. The Michigan Court of Appeals concluded that venue was proper.

3

> II. Irrelevant and highly prejudicial evidence became themes and were the repeated focus of this trial where the improper evidence enhanced the prosecution and destroyed the Defendant's right to a fair trial. U.S. Const. Amend. V, VI and IV, Mich. Const. 1963 Art. 1, §§ 17, 20.
>
> III. Where the prosecutor extensively berated Defendant's character before the jury with impermissible evidence and argument to the jury, a new trial is required.
>
> IV. Where the Sentencing Judge fails to resolve objections to the sentence information report and where the sentence for CSC II and obstruction of justice is disproportionate to these offenses and to the offender, there is an abuse of sentencing discretion requiring resentencing.
>
> IV. Defense counsel's failure to object to improper evidence and prosecutorial misconduct was constitutionally ineffective assistance of counsel. U.S. Const. Amend. V, VI and XIV.

(Report at 2.)

On July 25, 2007, Magistrate Judge R. Steven Whalen issued a Report and Recommendation on the Petition. The Report recommends that the Petition be conditionally granted on three independent grounds; however, each ground relies on the assumption that the testimony and prosecutorial conduct regarding Petitioner's failure to testify at the Probate Court Hearing was unconstitutional. (*See* Report, at 13-14.) The Report recommends habeas relief because: 1) the Petitioner was denied his Sixth and Fourteenth Amendment right to the effective assistance of trial counsel;[2] 2) the Petitioner was denied his Fifth and Fourteenth Amendment protection against self-incrimination;[3] and 3) the Petitioner was denied his Due Process right to a fair trial through prosecutorial misconduct.[4] (Report, at 13.)

---

[2] It appears that this ground for habeas relief corresponds to Issue V of the Petition.

[3] It appears that this ground for habeas relief corresponds to Issue I of the Petition.

[4] It appears that this ground for habeas relief also corresponds to Issue V of the Petition. The Report dismisses Issues II and IV of the Petition. It appears that the Report does not discuss Issue III, but the Court reads Issue III as Petitioner's submission of additional examples of prosecutorial misconduct.

It appears that Respondent objects to the Report for two reasons. First, Respondent argues that the Report erroneously relies on *Combs v. Coyle*, 205 F.3d 269 (6th Cir. 2000) to conclude that the prosecutor's behavior was constitutionally impermissible, because a Sixth Circuit opinion does not constitute "clearly established law" for habeas review under 28 U.S.C. § 2254(d). (Resp't Opp'n ¶ 11-14.) Second, Respondent argues that the testimony and prosecutorial conduct regarding Petitioner's failure to testify at the Probate Court Hearing were proper under *Jenkins v. Anderson*, 477 U.S. 231 (1980), because they were used for impeachment purposes and not as part of the prosecutor's case in chief. (Resp't Opp'n ¶ 12, 13.)

### III. STANDARD OF REVIEW

#### A. Report and Recommendation

The standard of review to be employed by the Court when examining a Report and Recommendation is set forth in 28 U.S.C. § 636. This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(B)(1). This Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

#### B. Habeas Corpus

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's habeas corpus review of Petitioner's state court convictions. The AEDPA provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim - -
>
> > a. resulted in a decision that was contrary to, or involved an

> unreasonable application of, **clearly established Federal law, as determined by the Supreme Court of the United States**; ...

28 U.S.C. § 2254(d) (emphasis added).

In enacting the AEDPA, Congress limited the source of law for habeas relief to cases decided by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ramonez v. Berghuis*, 490 F.3d 482, 486 (6th Cir. 2007); *Mitzel v. Tate*, 267 F.3d 524, 531 (6th Cir. 2001); *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998). In other words, lower federal court decisions may not be relied upon by courts to grant habeas relief. *Mitzel*, 267 F.3d at 531; *Herbert*, 160 F.3d at 1135. The policy underpinning this rule is based upon notions of comity and federalism. As noted by the Sixth Circuit in *Herbert*:

> The Supreme Court of the United States sets the bounds of what is "reasonable"; a state decision within those limits must be respected – not because it is right, or because federal courts must abandon their independent decision making, but because of the grave remedy of upsetting a judgment entered by another judicial system after full litigation is reserved for grave occasions.

*Herbert*, 160 F.3d at 1135.

## IV. LAW & ANALYSIS

The Report recommends that the Petition be conditionally granted because: 1) the Petitioner was denied his Sixth and Fourteenth Amendment right to the effective assistance of trial counsel; 2) the Petitioner was denied his Fifth and Fourteenth Amendment protection against self-incrimination; and 3) the Petitioner was denied his Due Process right to a fair trial through prosecutorial misconduct. (Report, at 13.) Although the Report recommends habeas relief on three independent grounds, each of the grounds "implicate[s] the testimony and prosecutorial argument regarding Petitioner's failure to testify at the prior hearing." (Report, at 14.)

Respondent argues that the testimony and prosecutorial argument regarding Petitioner's failure to testify at the prior hearing were not proscribed under clearly established Supreme Court precedent. If correct, this argument would serve to undermine each of the three grounds for relief contained in the Report. Respondent also argues that the testimony and prosecutorial argument regarding Petitioner's failure to testify at the prior hearing were used for impeachment purposes and not as substantive evidence against him.

The Court finds no merit in Respondent's argument that the tactics employed by the state prosecutor during Petitioner's trial are not proscribed under clearly established Supreme Court precedent. Although the Report cites and references *Combs v. Coyle*, 205 F.3d 269 (6th Cir. 2000) on several occasions, the rule that pre-arrest silence may not be used as substantive evidence of guilt, and that pre-arrest silence will be admitted at trial only for impeachment purposes is rooted under clearly established Supreme Court precedent. *See Brecht v. Abrahamson*, 507 U.S. 619, 628-29 (1993); *Griffin v. California*, 380 U.S. 609, 614-15 (1965).

The Court also finds no merit in Respondent's argument that the testimony and prosecutorial argument regarding Petitioner's failure to testify at the prior hearing were used for impeachment purposes only. Courts must consider four factors in determining whether or not prosecutorial misconduct unconstitutionally denied a defendant his right to a fair trial: 1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; 2) whether the conduct or remarks were isolated or extensive; 3) whether the remarks were deliberately or accidentally made; and 4) whether the evidence against the defendant was overwhelming. *Girts v.*

7

*Yanai*, 501 F.3d 743, 759-60 (6th Cir. 2007).

In analyzing these factors, the Magistrate Judge determined that the prosecutor's comments were highly prejudicial, extensive, and intentional. (Report at 27.) The Court agrees. If a prosecutor makes three references to a defendant's prior silence during closing arguments, the prosecutor's references are highly prejudicial, extensive, and intentional. *Girts*, 501 F.3d at 759-60. More importantly, such references constitute substantive evidence of guilt. *See id.* at 760 (noting that "[t]he statements were simply not a response to trial counsel's arguments because trial counsel "never mentioned anything in his opening statement about [Petitioner] testifying or not testifying") (internal quotations omitted). Here, Petitioner's trial counsel never mentioned anything in his opening statement about Petitioner's failure to testify. (*See* Dkt. # 22-7 at 23-38.)

The Magistrate Judge also determined that the state's evidence against Petitioner "was far from overwhelming." (*Id.*) The Court agrees. Although the record indicates that substantial evidence would support some facts, such as whether Petitioner was intoxicated on the evening in question, the record is devoid of substantial evidence regarding whether Petitioner improperly touched his daughter's breast in a manner to commit second degree criminal sexual conduct. (Report at 18.) The testimony of Petitioner's daughter that Petitioner rubbed her breast for four or five minutes was contradicted by every other witness for the prosecution, including Dondrea Hall, Janet Hall, Arthur Hall, and Amber Stiver. (Report at 19-20.) "Given the facts in this case, there is a strong likelihood that the prosecutor strategically made the prejudicial statements at the end of the trial to focus the jury's attention on Petitioner's silence, and away from the limited evidence presented at trial." *Girts*, 501 F.3d 761. Accordingly, the prosecutor's comments were not used for impeachment purposes.

Because the Court concludes that Respondent's two objections to the Report lack merit, the Report is accepted and adopted as this Court's findings and conclusions.

## V. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Report and Recommendation of Magistrate Judge R. Steven Whalen (Docket No. 34) is **ACCEPTED** and **ADOPTED**.

IT IS FURTHER ORDERED that Petitioner's Petition for Writ of Habeas Corpus (Docket No. 1) is conditionally **GRANTED**.

IT IS FURTHER ORDERED that Respondent take action to afford Petitioner a new trial within ninety (90) days of the date of this Order. If a new trial is not scheduled within ninety (90) days, Petitioner may apply for a writ to release Petitioner from custody.

IT IS FURTHER ORDERED that Respondent serve a copy of this Opinion and Order to the appropriate State Court and Prosecuting Attorney within ten (10) days' receipt of this Opinion and Order. A proxy of service must be filed by Respondent.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: March 7, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 7, 2008, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager